CASE NO. 21-cv-516-JD

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

WILLIAM L. HARDING,

Plaintiff,

v.

OKLAHOMA DEPARTMENT OF CORRECTIONS; JOSEPH HARP
FURNITURE FACTORY, *et al.,*

Defendants.

DEFENDANTS' MOTION TO DISMISS AND
MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

JESSICA WILKES, OBA#34823
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, Oklahoma 73105
Telephone: (405) 521-3921   Facsimile: (405) 521-4518

*Attorney for Defendants*

May 31, 2022

## TABLE OF CONTENTS

**TABLE OF CONTENTS**................................................................................i

**TABLE OF AUTHORITIES** ........................................................................ii

**DEFENDANTS' MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT** ...............................................................................................1

**STATEMENT OF THE CASE** ....................................................................1

**STATEMENT OF FACTS** ..........................................................................2

 *Exhaustion* .................................................................................................3

 *March 11, 2020 Request to Staff ("RTS")*..............................................4

 *March 18, 2020 RTS* .................................................................................4

 *March 19, 2020 RTS* .................................................................................5

 *OIG Investigation* .....................................................................................5

 *April 3, 2020 Grievance 20-128*...............................................................6

 *May 6, 2020 Grievance 20-054* .................................................................6

 *July 14, 2020 RTS and August 3, 2020 Greivance 20-138*.....................6

**STANDARD FOR DISMISSAL AND SUMMARY JUDGMENT** .................7

**ARGUMENT AND AUTHORITY** ...............................................................9

**PROPOSITION I:**

 **PLAINTIFF HAS FAILED TO EXAHUST HIS ADMINISTRATIVE REMEDIES**...............................................................................................9

 *ODOC's Grievance Process*......................................................................10

**PROPOSITION II:**

 **PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED** ...............................................................................................11

A. Equal Pay Act........................................................................................................12

B. 42 U.S.C. § 1981 – Racial discrimination.....................................................12

C. Overtime Pay........................................................................................................18

D. Hostile Work Environment and Cat Paw Theory............................................19

**CONCLUSION** ........................................................................................................20

**CERTIFICATE OF SERVICE** ...........................................................................21

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Creighton,*
483 U.S. 635 (1987) ........................................................................................................16

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ..........................................................................................................8

*Ashcroft v. al-Kidd,*
563 U.S. 731 (2011) ........................................................................................................17

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ...................................................................................................8, 16

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ...................................................................................................8, 16

*Bd. of Trustees of Univ. of Ala. v. Garrett,*
531 U.S. 356 (2001) ........................................................................................................13

*Bolden v. City of Topeka,*
441 F.3d 1129 (10th Cir. 2006) ......................................................................................13

*Booth v. Churner,*
532 U.S. 731 (2001) ..........................................................................................................9

*Branson v. Price River Coal Co.,*
835 F.2d 768 (10th Cir. 1988) ........................................................................................9

*Brewer v. Mullin,*
130 F.App'x 264 (10th Cir. 2005) ...............................................................................9, 10

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ..........................................................................................................8

*Cumbay v. State,*
1985 OK 36 ...............................................................................................................14, 15

*District of Columbia v Wesby,*
138 S Ct. 577 (2018) ......................................................................................................17

*Dubbs v. Head Start, Inc.,*
336 F.3d 1194 (10th Cir. 2003) ................................................................7, 12

*Eastwood v. Dep't of Corr. of State of Okla.,*
846 F.2d 627 (10th Cir. 1988) ...................................................................13

*E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles,*
450 F.3d 475 (10th Cir. 2006) ...................................................................19

*English v. Colo. Dept. of Corr.,*
248 F.3d 1002 (10th Cir. 2011) .................................................................20

*Felders v. Malcom,*
755 F.3d 870 (10th Cir. 2014) ...................................................................17

*Franks v. Oklahoma State Industries,*
7 F.3d 971 (10th Cir. 1993) .......................................................................18

*Gregorich v. Lund,*
54 F.3d 410 (7th Cir. 1994) .......................................................................17

*Grimsley v. MacKay,*
93 F.3d 676 (10th Cir. 1996) .....................................................................16

*Hafer v. Melo,*
502 U.S. 21 (1991) .....................................................................................13

*Haines v. Kerner,*
404 U.S. 519 (1972) .....................................................................................9

*Hall v. Bellmon,*
935 F.2d 1106 (10th Cir. 1991) ...................................................................9

*Hall v. Witteman,*
584 F.3d 859 (10th Cir. 2009) ...................................................................14

*Hampton v. Dillard Department Stores, Inc.,*
247 F.3d 1091 (10th Cir. 2001) .................................................................15

*Hernandez v. Mesa,*
173 S. Ct. 2003 (2017) ...............................................................................16

*Hrbek v. Farrier,*
787 F.2d 414 (8th Cir. 1986) .....................................................................14

*Jernigan v. Stuchell,*
304 F.3d 1030 (10th Cir. 2002) ........................................................................11

*Jett v. Dallas Ind. Sch. Dist.,*
491 U.S. 701 (1989) ............................................................................ 12, 13, 19

*Kay v. Bemis,*
500 F. 3d 1214 (10th Cir. 2007) ........................................................................9

*Kentucky v. Graham,*
473 U.S. 159 (1985) ........................................................................................13

*Kisela v. Hughes,*
138 S. Ct. 1148 (2018) ....................................................................................16

*Lane v. Simon,*
495 F.3d 1182 (10th Cir. 2007) .....................................................................2, 8

*Little v. Jones,*
607 F.3d 1245 (10th Cir. 2010) ......................................................................10

*Matsushita Electric Industrial Co. v. Zenith Radio Co.,*
475 U.S. 574 (1986) ..........................................................................................8

*Medina v. Cram,*
252 F.3d 1124 (10th Cir. 2001) ......................................................................17

*Morris v. Noe,*
672 F.3d 1885 (10th Cir. 2012) ......................................................................17

*N. Ins. Co. of New York v. Chatham Cnty.,*
547 U.S. 189 (2006) ........................................................................................13

*Pearson v. Callahan,*
555 U.S. 223 (2009) ........................................................................................17

*Price v. Johnston,*
334 U.S. 266 (1948) ........................................................................................18

*Robbins v. Oklahoma,*
519 F.3d 1242 (10th Cir. 2008) ...................................................................8, 16

*Smith v. McCord,*

707 F.3d 1161 (10th Cir. 2013) .......................................................................... 17

*Stimpson v. City of Tuscaloosa,*
186 F.3d 1328 (11th Cir.1999) ......................................................................... 20

*Webb v. Maynard,*
907 P.2d 1055 (1995) ............................................................................... 14, 18

*White v. Pauly,*
137 S. Ct. 548 (2017) ....................................................................................... 16

*Williams v. Meese,*
926 F.2d 994 (10th Cir. 1991) ................................................................... 12, 18

*Wolff v. McDonnell,*
418 U.S. 539 (1974) .......................................................................................... 18

*Woodford v. Ngo,*
548 U.S. 81 (2006) ............................................................................... 9, 10, 11

*Yoder v. Honeywell, Inc.*
109 F.3d 1215 (10th Cir. 1997) .......................................................................... 8

## STATUTES

29 U.S.C. § 206 ................................................................................................. 12

42 U.S.C. § 1981 ............................................... 1, 11, 12, 13, 15, 16, 18, 19

42 U.S.C. § 1981 (a)-(b) .................................................................................. 15

42 U.S.C. § 1983 ................................................................................12, 13, 14, 16

42 U.S.C. § 1997e(a) .......................................................................................... 9

## RULES

Fed. R. Civ. P. 8(a)(2) ........................................................................................ 8

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 1

Fed. R. Civ. P. 56 ............................................................................................... 1

Fed. R. Civ. P. 56(a) ........................................................................................... 8

## OTHER

Prisoner Not Protected From Racial Job Bias,
2 Emp. Prac. Guide (CCH)............................................................................................12

EEOC Decision No. 86-7................................................................................................12

## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

WILLIAM L. HARDING,

        Plaintiffs,

v.

OKLAHOMA DEPARTMENT OF
CORRECTIONS; *et al.*,

        Defendants.

**Case No.: 21-cv-516-JD**

**(Removed from Cleveland County District Court Case No: CJ-21-487, consolidated with 21-cv-842)**

### DEFENDANT'S MOTION TO DISMISS *OR IN THE ALTERNATIVE* MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Defendant Anthony Wiechec, pursuant to Fed. R. Civ. P. 12(b)(6), move to dismiss Plaintiff's Petition [Doc. 1-1] for the reason that Plaintiff failed to state a claim upon which relief can be granted. In the alternative, pursuant to Fed. R. Civ. P. 56, Defendant requests that this Court grant summary judgment in their favor. In support thereof, Defendant submits the following brief.

### STATEMENT OF THE CASE

Plaintiff is an inmate currently in the custody of the ODOC and incarcerated at the Northfork Correctional Center ("NFCC") serving a life sentence for First Degree Murder. [Doc. 11-2, at p. 2].[1] Plaintiff filed his initial complaint on May 20, 2021 in the District Court of Cleveland County, Oklahoma alleging, *inter alia*, discrimination, hostile work environment, retaliation, and violations under 42 U.S.C. §1981 and the Equal Pay Act concerning his employment at the Joseph Harp Correctional Center ("JHCC") in March 2020. *See* [Doc. 1-1];

---

[1] All references to page numbers in the Special Report are to the Bates numbering at the bottom right-hand corner of the Report.

*see also* [Doc. 1-2]. Defendants removed Plaintiff's initial matter to federal court on August 25, 2021, and discovered that Plaintiff filed a Complaint on May 18, 2021, identifying identical defendants, causes of action, and requested relief. *See* CIV-21-CV-842. It appears Plaintiff also paid the filing fee for the previously filed matter and therefore Defendants respectfully request that this removed Petition be dismissed for forum shopping, duplicity, and judicial economy.

With respect to the removed Petition, Plaintiff's claims must fail because Plaintiff failed to exhaust his administrative remedies, Plaintiff has no employment relationship with defendant to support his employment related claims, Plaintiff is not entitled to overtime pay, and there are insufficient facts demonstrating that his termination was racially motivated or that he faced racial discrimination at JHCC's furniture factory.[2] *See generally*, [Doc. 1-1]. For these reasons, Plaintiff's claims against this Defendant must be dismissed. This brief relies upon the Court-ordered Special Report filed contemporaneously in this action at [Doc. 11].

## STATEMENT OF FACTS

1.      Plaintiff William Harding was received into custody of the ODOC on January 9, 2014 and has resided at the JHCC from June 25, 2014 until his transfer to NFCC on June 3, 2021. [Doc.11-1 at p. 11].

---

2  It appears the second cause of action, Defamation, and the third cause of action, Retaliation, are asserted solely against Defendant Anthony Wiechec who has not yet been served in this matter or CIV-21-516-JD. *See* [Doc. 1-1 at pp. 8-9]. Therefore, these Defendants do not address Plaintiff's Defamation or Retaliation claim because there are no allegations against these Defendants to these claims the defendants must have fair notice of "what the claim is and the grounds upon which it rests." *See Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007). To the extent this Court finds there are plausible facts for Plaintiff's Defamation or Retaliation claim against Defendants ODOC, Joseph Harp Furniture Factory, Alex Lunn and/or Keith Wells, Defendants respectfully request an opportunity to address the merits of these claims in a separate Motion to Dismiss.

2.      At all relevant times, the allegations made in this Petition took place at the JHCC around March 2020. *See generally* [Doc. 1-1]; *see also* [Doc. 11 at p. 2].

3.      At JHCC, Plaintiff was employed by the Oklahoma Correctional Industries' ("OCI") furniture factory located at JHCC. *See id.*

4.      OCI is a self-supporting entity that provides work opportunities and job skills training for inmates that can assist them in employment after release. [Doc. 11-13, p. 109].

5.      Inmates are paid only for hours worked and will not be paid for time away from the job when their presence is required by other institutional departments such as classification, reviews, counseling, school, security, canteen, etc. *Id.* at p. 113.

6.      Plaintiff was transferred to NFCC when ODOC staff feared Plaintiff would physically harm him and he was found guilty of being disrespectful to staff in April 2021. [Doc. 11-19].

*Exhaustion*

7.      ODOC's Administrative Review Authority ("ARA") has not received a grievance or a grievance appeal from Plaintiff regarding the following claims: defamation of character, retaliation, or overtime compensation. [Doc. 11-12 at p. 107].

8.      The ARA did receive an improperly submitted grievance from Plaintiff regarding his alleged racial discrimination and dispute regarding his compensation, but he was instructed to properly resubmit his grievance to the reviewing authority at JHCC within 10 days of receipt. *Id.* Plaintiff failed to do so and therefore the ARA has not received a proper grievance or grievance appeal regarding his discrimination and/or compensation claims. *Id.*

*March 11, 2020 Request to Staff ("RTS")*

9.      On March 11, 2020, Plaintiff submitted a RTS to Defendant Lunn alleging that he was "laid in," *i.e.,* asked not to return to work for one week, for "hobby crafting" in violation of JHCC policy. [Doc. 11-3, pp. 17-18]; *see also* [Doc. 11-20]. Despite building a weightlifting bench at OCI's furniture factory, in violation of JHCC Policy 030106-02, Plaintiff complained in his RTS that other employees raised their voice to their supervisor without similar repercussion and that he personally made serving trays and cutting boards for his supervisor in exchange for apple fritters. *See* [Doc. 11-3]. Plaintiff requested to be fully compensated for the personal items made for his former supervisor and for all days he was "laid in". *Id.* at p. 17. In response, Plaintiff was advised that his RTS prompted an investigation by OIG and that he could not return to work during the investigation of this RTS. *Id.*

*March 18, 2020 RTS*

10.      On March 18, 2020, Plaintiff submitted another RTS to Defendant Lunn's supervisor stating that he was informed by Defendant Wiechec that he could not return to work because of the pending investigation. [Doc. 11-4, pp. 20-22]. In his RTS, Plaintiff alleged that he experienced racial prejudice and bias because white inmates who had raised their voices to Defendant Wiechec did not face similar consequences. *Id.* at p. 22. Plaintiff requested that he be paid for every day he was "laid in," a written apology from Defendant Wiechec and compensation for every furniture item he made for Defendant Wiechec. *Id.*

11.      In response, Plaintiff was advised that his RTS was being investigated by OIG and that he could not return to work during the investigation of these RTS's. *Id.*

~ 4 ~

### *March 19, 2020 RTS*

12.     On March 19, 2020, Plaintiff submitted another RTS to Defendant Lunn claiming that he wants a fair investigation and would like to also speak to an investigator. *Id.*, Att. 5 at pp. 24-25. In response, Plaintiff was advised that this request would be forwarded to the investigator(s) and that the investigation was still under review by OIG. *Id.* at p. 24.

### *OIG Investigation*

13.     On March 18, 2020, OIG was assigned to investigate allegations made by Plaintiff against Defendant Wiechec in his March 11th and March 18th RTS's. [Doc. 12]. During the course and scope of the investigation, agents spoke with Plaintiff, fellow inmates, and ODOC staff, including Defendant Wiechec. *Id.*

14.     Based on the information discovered through interviews, documentation and admissions, the investigator confirmed allegations of employee misconduct given that Defendant Wiechec admitted to purchasing donuts and fritters for inmates working in OCI as a reward for their hard work but denied making an agreement with Plaintiff in exchange for completing personal projects. *Id.*

15.     It was revealed that Plaintiff was "laid in" for a week for violating JHCC's policy for "hobby crafting" after Plaintiff admitted to Defendant Wiechec that he built a weightlifting bench in the JHCC facility. *Id.*

16.     Plaintiff was not "laid in" for any other reason. *Id.*

*April 3, 2020 Grievance 20-128*

17.     On April 3, 2020, Plaintiff submitted an improper grievance to ODOC's Director Scott Crow requesting that Defendant Wiechec compensate him for alleged personal items built and for the time he was not working. [Doc. 11-11, pp. 103-104].

18.     On April 20, 2020, Plaintiff was informed that his grievance was filed improperly and returned unanswered with guidance to properly submit his grievance to the reviewing authority at JHCC. *Id.* at p. 102. Plaintiff failed to do so and thus the ARA has not received another grievance or grievance appeal regarding these issues. [Doc. 11-12, p. 107].

*May 6, 2020 Grievance 20-054*

19.     On April 28, 2020, Plaintiff improperly submitted a grievance requesting that he remain at his current job at OCI, be paid for all days "laid in" and be paid for all personal items allegedly made for Defendant Wiechec. [Doc. 11-9, p. 90].

20.     On May 11, 2020, Plaintiff's grievance was returned unanswered in light of the pending investigation and because no RTS evidence was attached to his submission. *Id.* at p. 89.

21.     Plaintiff did not appeal the reviewing authority's response to the ARA. [Doc. 11-12].

*July 14, 2020 RTS and August 3, 2020 Grievance 20-138*

22.     On July 14, 2020, Plaintiff submitted two RTS's alleging different issues against ODOC officer Baily, a non-defendant in this case. [Doc. 11-10, pp. 96-99]. The first RTS alleged that ODOC officer Baily demonstrated reverse racism on the unit and Plaintiff requested an apology due to his alleged acts of discrimination. *Id.* at p. 96. In response, Plaintiff

was advised that the issue would be investigated and the officer would be spoken to. *Id.* at p. 96.

23.     Plaintiff's second RTS alleged that Officer Baily took his hobby craft item, the weightlifting bench, in retaliation for his first RTS against Officer Baily. *Id.* at p. 98. Plaintiff requested that the hobby craft item be returned or that Officer Baily pay for the hobby craft. *Id.* In response, Plaintiff was advised that the unit manager had already spoken with Officer Baily and Plaintiff about this issue. *Id.*

24.     Plaintiff did not appeal the reviewing authority's response to the ARA. [Doc. 11-12].

25.     On August 3, 2020, unrelated to these two RTS's against Officer Baily, Plaintiff attempted to circumvent the grievance process by submitting an improper grievance requesting that Defendant Wiechec pay him for alleged personal items built and for the time he was not working. [Doc. 11-11, pp. 103-104].

26.     On April 20, 2020, Plaintiff was informed that his grievance was filed improperly and was returned unanswered with instructions to properly resubmit his grievance correctly within 10 days. *Id.* at p. 102. Plaintiff did not appeal the reviewing authority's response to the ARA. [Doc. 11-12, p. 107].

## STANDARD FOR DISMISSAL AND SUMMARY JUDGMENT

A complaint should be dismissed for failure to state a claim upon which relief can be granted when "it appears that the plaintiff can prove no set of facts in support that would entitle him to relief, accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff." *Dubbs v. Head Start, Inc.*, 336 F.3d

1194, 1201 (10th Cir. 2003) (quoting *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1224 (10th Cir. 1997)). To state a valid claim, a plaintiff must allege sufficient factual detail such that the complaint shows a plausible right to relief on its face. *See generally* Fed. R. Civ. P. 8(a)(2); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007). The complaint must also give the defendant fair notice of "what the claim is and the grounds upon which it rests." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007).

"[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678. While a plaintiff's allegations are typically entitled to a presumption of truth, legal conclusions are not. *Id.* Therefore, plaintiff must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." *Id.* (quoting *Twombly*, 550 U.S. at 565 n. 10). Plausibility does not mean "likely to be true," it means that the allegations must be enough that if assumed to be true the plaintiff plausibly, not merely speculatively, has a claim for relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 565 n. 10).

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby,* 477 U.S. 242, 247 (1986). To survive a motion for summary judgment, the nonmovant must establish the existence of a genuine issue of material fact. To demonstrate a genuine issue of material fact in opposition to a motion for summary judgment, the nonmoving party must do more than raise a "metaphysical doubt" as to the material facts. *Matsushita Electric Industrial Co. v. Zenith Radio Co.*, 475 U.S. 574, 586 (1986); *Anderson,* 477 U.S. at 252. Mere assertions or

conjecture as to factual disputes are not enough to survive summary judgment. *Branson v. Price River Coal Co.,* 853 F.2d 768, 772 (10th Cir. 1988).

Courts are required to construe pro se litigants' pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Even so, all parties must adhere to applicable procedural rules. *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). "[A] *pro se* plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). It is thus improper for a court to assume the role of advocate because a plaintiff is *pro se. Id.*

## ARGUMENT AND AUTHORITY

## PROPOSITION I: PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES.

Pursuant to the PLRA, "[n]o action shall be brought with respect to prison conditions under any Federal law, by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Thus, a prisoner cannot sue concerning prison conditions, including any employment related claims, without first exhausting all available administrative remedies. *Booth v. Churner*, 532 U.S. 731, 733-34 (2001); 42 U.S.C. § 1997e(a). Exhaustion is required for all inmates seeking relief in federal district court regardless of the type of relief available under the institutional administrative procedure. *Woodford v. Ngo,* 548 U.S. 81 (2006); *Booth,* 532 U.S. at 741.

To properly exhaust, the prisoner must comply "with an agency's deadlines and other critical procedural rules...." *Ngo*, 548 U.S. at 90. "Simply presenting a defective or non-complying grievance...does not constitute exhaustion of remedies." *Brewer v. Mullin*, 130

F.App'x 264, 265 (10th Cir. 2005) (not selected for publication). Moreover, a prisoner must timely exhaust each and every step of a prison system's grievance procedure in full compliance with the procedure's requirements; partial compliance is not sufficient. *Id.* Finally, the prisoner must complete the grievance process or there is no exhaustion of administrative remedies. *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010).

### ODOC'S Grievance Process

ODOC Policy OP-090124, "Offender Grievance Process," governs ODOC offender complaints regarding incidences of prison life. [Doc. 11-8]. Further, it provides the multi-step exhaustion process an offender must satisfy before filing suit. *Id.* According to OP-090124(IV), an offender must first attempt to informally resolve his complaint by talking with the appropriate staff member. *See* OP-090124(IV). If unsuccessful, then the offender must submit a Request to Staff ("RTS") to the appropriate staff member. *Id.* at (IV)(C). If the offender's complaint remains unresolved, the offender may begin the formal grievance procedure by submitting a Grievance to the Reviewing Authority. *Id.* at (V). If a grievance response fails to resolve the issue, the inmate should appeal to the Administrative Review Authority ("ARA"), or if the complaint is medical related, to the Chief Medical Officer. *Id.* at (VII). Only after all these steps are taken has the grievance process been exhausted.

Exhaustion of administrative remedies under the PLRA requires the inmate to properly use all steps that the agency puts forth. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Requiring an inmate to fully comply with the grievance process set out by the prison system allows the agency to address the issue on the merits. *Id.* Further, proper exhaustion gives the prison authority the opportunity to deal with and correct internally any issues before being hauled

into court. *Id.* at 94. This process promotes efficiency by allowing prisons to address problems in a more cost effective and rapid manner than would be possible in litigation. *Id.*

Here, Plaintiff's March 8, 2020, RTS prompted an investigation by OIG into the allegations concerning the alleged misconduct of prison officials trading or giving anything of value to inmates without written consent by the employee's supervisor. *See generally id.* at [Doc.11-7] and [Doc. 12]. Plaintiff further claims that he suffered retaliation and racial discrimination when he was asked not to return to work for a week, *i.e.* "laid in". *Id.* However, Plaintiff failed to exhaust (and in some instances, even begin) administrative remedies as to the issues raised in his Petition. [Doc. 11-12, p. 107]. As demonstrated above, ODOC's ARA has not received a grievance or a grievance appeal from Plaintiff regarding his claims for defamation of character, retaliation, or overtime compensation. *Id.* Even though the ARA did receive an improperly submitted grievance from Plaintiff regarding his alleged racial discrimination and compensation claims, Plaintiff still failed to resubmit his appeal on two separate occasions despite being instructed to do so. *Id.* Prisoners must exhaust remedies, even if doing so seems futile. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). Here, the ARA has not received a proper grievance or grievance appeal regarding the claims he now brings in this lawsuit. *Id.* Because Plaintiff failed to exhaust administrative remedies, his claims against these Defendants must be dismissed. *Id.*

## PROPOSITION II: PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Plaintiff alleges that 42 U.S.C. § 1981 and the Equal Pay Act support his claim for various employment related causes of actions broadly asserted against these Defendants: *i.e.*

racial discrimination, a failure to pay overtime pay, hostile work environment and a cat's paw theory of liability. *See* [Doc. 1-1 at pp. 8-10]. However, Plaintiff's employment relationship with the Defendants arises from Plaintiff's incarceration, not his employment. *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991) (citing Prisoner Not Protected From Racial Job Bias, 2 Empl.Prac.Guide (CCH) ¶ 6865, at 7099 (April 18, 1986) (EEOC Decision No. 86–7)). While Plaintiff received monetary compensation for his work, the reality of his work relationship between the Defendant was not one of employment, and this Court should dismiss his employment related claims for failure to state a claim upon which relief can be granted.

### A.  Equal Pay Act

First, as a preliminary matter, claims arising from the Equal Pay Act must fail as there are no allegations of discrimination based on sex. Subsection (d) of 29 U.S.C. § 206 (Equal Pay Act), cited by Plaintiff in his Petition, concerns only discrimination based on sex, not race, age, or handicap. Because Plaintiff is incarcerated at a male-only prison, and there are no allegations of discrimination on the basis of sex, this claim fails and warrants dismissal.

### B.  42 U.S.C. § 1981 – Racial Discrimination

Plaintiff cites 42 U.S.C. § 1981 as the basis for his racial discrimination claim, but this claim fails as a matter of law. "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.,* 336 F.3d 1194, 1201 (10th Cir.2003) (quotation omitted). Here, §1981 does not provide a vehicle for remedying racial discrimination and retaliation in cases brought against state actors. *Jett v. Dallas Ind. Sch. Dist.*, 491 U.S. 701, 705, 735 (1989). Rather, 42

U.S.C. § 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Id.* at 735; *see also Bolden v. City of Topeka,* 441 F.3d 1129, 1137 (10th Cir. 2006) ("conclud[ing] that even after the 1991 amendments to § 1981, damages claims against state actors for § 1981 violations must be brought under § 1983"). Therefore, "the express 'action at law' provided by § 1983 for the 'deprivations of any rights, privileges, or immunities secured by the Constitution and laws' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Jett v. Dallas Ind. Sch. Dist.* at 735. Because Plaintiff failed to articulate his claims under § 1983, his § 1981 claim fails as a matter of law.

Even assuming we can infer a § 1983 claim, these Defendant in his official capacity is immune from suit. Any suit against a public official in his or her "official capacity" is treated as a suit against the governmental entity for which the official is an agent. *Hafer v. Melo*, 502 U.S. 21 (1991). The Eleventh Amendment has been interpreted to prevent private individuals from suing a state in federal court and extends to "arms of the states." *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001); *N. Ins. Co. of New York v. Chatham Cnty.*, 547 U.S. 189, 193 (2006). Defendant Wiechec served as a public official for ODOC, and ODOC and JHCC Furniture Factory are arms of the state and are entitled to such immunity. *Eastwood v. Dept. of Corr. of State of Okla.,* 846 F.2d 627, 631-32 (10th Cir. 1988). Further, suits against officials in their official capacities cannot be maintained because individuals in their "official capacities" are not proper parties to a § 1983 action. *Kentucky v. Graham*, 473 U.S. 159 (1985). Therefore, Eleventh Amendment bars monetary recovery against ODOC, JHCC Furniture Factory, Lunn and Wells in their official capacities.

Plaintiff also fails to plead sufficient facts to state a valid claim upon which relief can be granted against Defendant Wiechec in his individual capacities. To assert a claim under 42 U.S.C. § 1983, a plaintiff must show as a threshold matter (1) that a right secured by the Constitution and laws of the United States was violated and (2) that a person acting under color of state law deprived the plaintiff of the right. *Hall v. Witteman,* 584 F.3d 859, 864 (10th Cir. 2009). Here, it is unclear what constitutional violation Plaintiff is asserting against Defendant Weichec. *See generally* [Doc. 1-1]. There are also no facts suggesting that the individual Defendant personally participated in any alleged constitutional violation. *See id.*

As a preliminary matter, there is no constitutional entitlement on part of prison inmates to employment or compensation granted and administered by the State. *Cumbay v, State*, 1985 OK 36, 699 P.2d 1094 (claiming that whatever right an inmate has to compensation is solely by the grace of the state and governed by rules and regulations promulgated by legislative direction); *Hrbek v. Farrier*, 787 F.2d 414, 416 (8th Cir.1986)(holding that "[t]here is no constitutional right to prison wages and any such compensation is by the grace of the state…"); *see also Webb v. Maynard*, 907 P.2d 1055 (1995) (holding that ODOC's requirement to withdraw a portion of inmate's earnings to apply towards court costs and victim compensation makes such account a conditional credit of potentially accessible funds, rather than a vested property interest). Accordingly, a state may legitimately restrict an inmate's privilege to earn a wage while incarcerated and whatever right to compensation is governed by the rules and regulations promulgated by legislative direction. *Cumbay v, State*, 699 P.2d at 1097. Moreover, "[t]he state prison industries is not a proprietary corporation, but is rather concerned with providing for the proper government, discipline, treatment, care,

rehabilitation, and reformation of state inmates. In furtherance of these objectives, the state legislature may grant a favor to convicted criminals, but it may also attach such conditions to the granting of the favor as it deems proper." *Id*.

In any event, Plaintiff alleges that he is a member of a protected class but there are insufficient facts from which to infer that the Defendant's actions were racially discriminatory or that it interfered with his right to make and enforce a contract. To establish a prima-facie case of discrimination under § 1981, Plaintiff must allege: (i) that he is a member of a protected class; (ii) that the State Defendant intended to discriminate against him on the basis of race; and (iii) that the discrimination interfered with a protected activity as defined in § 1981. *See Hampton v. Dillard Department Stores, Inc.,* 247 F.3d 1091, 1101–02 (10th Cir. 2001). Section 1981 provides that all persons shall have the same right to "make and enforce contracts," and the right to "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a)-(b). However, there are also no facts alleged from which to infer that Plaintiff was treated differently than similarly situated white prisoners. Although Plaintiff generally claims that white prisoners "did not suffer the same fate for speaking up for themselves," [Doc. 1-1 at p. 9] we have no facts to suggest that similarly situated white prisoners were not in fact, subjected to the same "laid in" consequence or termination for violating JHCC policy. Plaintiff completely overlooks his own admission to violating JHCC policy when he crafted the weightlifting bench and expects this Court to assume that this "laid in" period was because he "spoke up for himself." As evidenced by the independent OIG investigation, this consequence was not motivated by any racially

discriminatory purpose, and, therefore, Plaintiff cannot plausibly state a cause of action under § 1981 against Defendant Wiechec.

Further, Plaintiff has not sufficiently alleged that Defendant Wiechec personally participated in any constitutional violation regarding his employment at JHCC. The Tenth Circuit has repeatedly held that, in § 1983 actions, specific factual allegations with regard to the elements of each claim are particularly important because "state actors may only be held liable under § 1983 for their own acts." *Robbins v. Oklahoma*, 519 F.3d 1242 at 1251; *see also Grimsley v. MacKay,* 93 F.3d 676, 679 (10th Cir. 1996)(claiming a public official cannot be individually liable unless an affirmative link can be shown between the official's conduct and the alleged constitutional violation). Therefore, a plaintiff must plead that *each* government-official defendant, through the official's own individual actions, has violated the constitution. *Ashcroft v. Iqbal*, 556 U.S. 662 at 676. Plaint names Defendant Wiechec; however, Plaintiff's vague and conclusory statements are insufficient to state a claim for § 1981 or § 1983 relief. Here, Plaintiff pled no "more than labels and conclusions" against Defendant Wiechec and this racial discrimination claim must be dismissed. *Twombly* 550 U.S. at 555.

Finally, individually named Defendants are immune from Plaintiff's claims for damages under the doctrine of qualified immunity. Qualified immunity shields government officials from civil liability. This shield can only be penetrated when the official violates clearly established constitutional rights of which a reasonable person would have known. *Hernandez v. Mesa*, 173 S. Ct. 2003 (2017); *see also Kisela v. Hughes*, 138 S. Ct. 1148 (2018). In addition, "the clearly established law must be 'particularized' to the facts of the case" and may not be defined at a high level of generality. *White v. Pauly*, 137 S. Ct. 548, 552 (2017) *quoting Anderson v. Creighton*,

483 U.S. 635, 640 (1987). It is the plaintiff's burden to produce case law in which "the facts of the existing case law must closely correspond to the contested action before the defendant official is subject to liability." *Gregorich v. Lund*, 54 F.3d 410, 415 (7th Cir. 1994); *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (we have stressed the need to "identify a case where an officer acting under similar circumstances . . . was held to have violated [federal law]"). The failure to identify such a case is fatal to the claim. *Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013).

Therefore, qualified immunity protects officials regardless of whether the official's error is a mistake of law, mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson v. Callahan*, 555 U.S. at 232; *Ashcroft v. al–Kidd*, 563 U.S. 731, 743 (2011) (When properly applied it protects "all but the incompetent or those who knowingly violate the law"). Once a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate that (1) the defendant violated one of his constitutional rights, and (2) the right in question was clearly established at the time of the allegedly unlawful activity such that "every reasonable official would have understood that what he [was] doing" violated the law. *Morris v. Noe*, 672 F.3d 1185, 1191 (10th Cir. 2012); *see also Felders v. Malcom*, 755 F.3d 870, 877–78 (10th Cir. 2014) ("The 'record must clearly demonstrate that the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity.'")(quoting *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001)).

As for the first prong of the qualified immunity analysis, Plaintiff fails to state a constitutional claim based on these Defendant's actions. As such, Plaintiff cannot overcome the qualified immunity defense without a constitutional violation. Further, as laid out above,

Plaintiff cannot meet his burden of establishing that Defendant violated his constitutional rights. Generally, "[a] prison inmate has no inherent legal right to gratuitous payment of prison earnings into inmate's account, or to determine its form or amount. *Webb v. Maynard*, 907 P.2d at 1055. Furthermore, "Lawful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen, a 'retraction justified by the considerations underlying our penal system.'" *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974) (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948)). For the foregoing reasons, the law is not clearly established that Plaintiff's rights have been violated by Defendant Wiechec, and he is entitled to qualified immunity with respect to Plaintiff's § 1981 and §1983 claims.

### C. Overtime Pay

Although unclear as to what statute or law forms the basis of Plaintiff's claim for overtime pay [Doc. 1-1 at p. 9], Plaintiff is not an "employee' entitled to overtime under the Fair Labor Standards Act ("FLSA"). The Tenth Circuit has made it clear that the FLSA economic reality test was not intended to apply to work performed in the prison by an inmate. In *Franks v. Oklahoma State Industries*, the Tenth Circuit applied the same rationale that a federal prison inmate was not an "employee" under Title VII, the Equal Pay Act, or the Age Discrimination in Employment Act to an Oklahoma prisoner's FLSA claim. *See Franks v. Oklahoma State Indus.*, 7 F.3d 971, 972 (10th Cir. 1993) (referencing *Williams v. Meese*, 926 F.2d 994 at 997). The Court, in agreement with *Williams*, denied Oklahoma inmates' claim that they were entitled to overtime under the FLSA. *Id.* Because Congress did not intend to extend the FLSA definition of "employee" to Plaintiff working in prison, his claim for overtime pay must also be dismissed for failure to state a claim upon which relief can be granted.

### D. Hostile Work Environment and Cat Paw Theory

With respect to Plaintiff's § 1981 claim based on a hostile work environment theory, Plaintiff's claim fails as a matter of law for reasons stated above. *Jett v. Dallas Ind. Sch. Dist.*, 491 U.S. at 735. Plaintiff's § 1981 claim is based on his theory that, as an employee in JHCC's Furniture Factory, he was subjected to a hostile working environment based on alleged racial harassment or discrimination. *See generally* [Doc. 1-1]. However, Plaintiff cites no authority to support the proposition that a prisoner has standing to sue the facility in which he is incarcerated as his employer. In any event, Plaintiff has failed to offer any evidence of racial discrimination other than his conclusory and insufficient and unsupported allegations of racially motivated actions by Defendant Wiechec. *See id.* Even so, Defendant Wiechec confirmed that Plaintiff's "laid in" period was due to Plaintiff's own admission to violating JHCC policy for "hobby crafting" and not for any other reason. *See* [Doc. 12-1]. Given that Plaintiff's facts consist largely of general, conclusory statements by Plaintiff which, in addition to being nonspecific, offers no support that Defendant was motivated by a race-based animus. This claim should be dismissed.

Finally, Plaintiff's cat's paw theory of liability also fails as a matter of law. In an employment discrimination context, "cat's paw" refers to a situation in which a "biased subordinate, who lacks decision-making power, uses formal decision-maker as a dupe in a deliberate scheme to trigger discriminatory employment action." *E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476 (10th Cir. 2006). In the Tenth Circuit, a plaintiff may not recover under this theory without showing "'that the decision maker followed the biased recommendation [of a subordinate] without independently investigating the complaint against

the employee.'" *English v. Colo. Dept. of Corr.,* 248 F.3d 1002, 1011 (10th Cir. 2001) (quoting *Stimpson v. City of Tuscaloosa,* 186 F.3d 1328, 1332 (11th Cir.1999)). An important factor is whether, during the course of the investigation, the decision maker allows the claimant to give his version of events. *Id.* Here, Plaintiff broadly alleges that Defendants Wiechec, Lunn and Wells "made personal decisions" at the direction of "certain white personnel" to dictate who was hired, where they worked and how much they were paid. *See* [Doc. 1-1 at p. 10]. Aside from the conclusory and speculative facts surrounding "certain white personnel," Plaintiff was provided an opportunity to give his version of events when OIG interviewed him during the course of the investigation. *See* [Doc. 12-1]. The evidence of the record establishes a sufficiently independent investigation by OIG to insulate employment decisions from any bias of a subordinate or by any alleged "certain white personnel." *Id.* Because Plaintiff's Petition does not reasonably give rise to an inference that these defendants acted with retaliatory animus or that these actors were completely influenced in any decision making process regarding Plaintiff's employment, this claim should also be dismissed.

## CONCLUSION

For the reasons set forth above, Plaintiff's claims must fail in their entirety against Defendant Wiechec.

Respectfully submitted,

/s/Jessica Wilkes
**JESSICA WILKES, OBA #34823**
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Section
313 NE 21st Street
Oklahoma City, OK 73105
Telephone: (405) 521-3921
Facsimile: (405) 521-4518
Email: Jessica.wilkes@oag.ok.gov
*Attorney for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of May 2022, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing. I further that a true and correct copy of the foregoing document was sent via USPS mail to the following persons who is not an ECF registered participant:

William Harding #234134
NFCC
1605 E. Main
Sayre, OK 73662
*Plaintiff Pro se*

/s/Jessica Wilkes
Jessica Wilkes