IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WILLIAM L. HARDING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-21-00516-JD |
| | ) |
| OKLAHOMA DEPARTMENT OF | ) |
| CORRECTIONS, et al., | ) |
| | ) |
| Defendants. | ) |

### ORDER

Before the Court are Motions to Dismiss, or in the alternative, Motions for Summary Judgment[1] filed by the Oklahoma Department of Corrections ("ODOC"), Joseph Harp Furniture Factory, Alex Lunn, Keith Wells, and Anthony Wiechec (collectively "Defendants") [Doc. Nos. *13, 36];[2] Plaintiff's responses [Doc. Nos. *27, 39]; a Report and Recommendation ("R. & R.") issued by Magistrate Judge Amanda Maxfield Green [Doc. No. 40]; pro se Plaintiff William Harding's ("Harding") objection [Doc. No. 46]; and Harding's Motion for Discovery [Doc. No. 43] to which Defendants objected [Doc. No. 44].[3] For the following reasons, the Court grants the Motions for

---

[1] Since the Court grants summary judgment to Defendants, it refers to the motions as Motions for Summary Judgment.

[2] Asterisks denote documents available for viewing on the docket for Case No. CIV-21-842, which was consolidated with this earlier-filed action. *See* [Doc. No. 28].

[3] "A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court does not "assume the role of advocate for the pro se litigant." *Id.*

1

Summary Judgment, accepts the R. & R., and denies the Motion for Discovery.[4]

## I. BACKGROUND

Harding was imprisoned for first-degree murder by ODOC at the Joseph Harp Correctional Facility ("JHCC") during the events relevant to this suit.[5] ODOC has an inmate grievance process that is distributed to all inmates. "Inmates/offenders are required to exhaust the grievance process prior to filing a lawsuit (42 U.S.C. § 1997(e) and 57 O.S. § 564)." [Doc. No. *11-8 at 3]. Inmates must follow three primary steps to administratively exhaust claims.

First, inmates must seek to resolve the dispute informally by talking with the affected staff and then, if that does not fix the situation, by submitting a Request to Staff ("RTS") that details the incident and follows all necessary requirements.[6] Second, an inmate must submit an Inmate/Offender Grievance Form "to the appropriate reviewing authority." [*Id.* at 11]. The reviewing authority is the "facility/unit head or facility correctional health services administrator (CHSA) where the incident occurred." [*Id.* at 4]. "If the location of the alleged incident is unknown or uncertain, the inmate/offender will consult with their case manager/designated staff for assistance." [*Id.* at 12]. "The grievance form must be proper, complete, and submitted to the proper reviewing

---

[4] The Court uses CM/ECF page numbering from the top of filings in citations.

[5] He is now incarcerated at the Allen Gamble Correctional Facility (formerly Davis Correctional Facility) in Holdenville, Oklahoma. *See* [Doc. No. 26].

[6] For example, the RTS must "be submitted within seven (7) days of the incident" and must only include the details of "one issue or incident" per form. [Doc. No. *11-8 at 9].

authority" or it "may not be answered." [*Id.* at 11, 12]. "If allowed, the inmate/offender must properly re-submit the grievance within 10 days of notice of improper filing." [*Id.* at 12]. Lastly, if the issue is still not resolved after receiving a response from the reviewing authority, an inmate can appeal the reviewing authority's response to the Administrative Review Authority ("ARA") if there is "[n]ewly discovered/available evidence" or "[p]robable error committed by the reviewing authority in the decision such as would be grounds for reversal." [*Id.* at 14–15]. "The ARA will notify the inmate/offender when a grievance and/or grievance appeal is submitted improperly. The inmate/offender will be given one opportunity to correct any errors, which must be received by the ARA within 10 days of the time the inmate/offender is notified of improper submission." [*Id.* at 16]. "The ruling of the ARA is final and will conclude the internal administrative process available to the inmate/offender within the jurisdiction of ODOC. The inmate/offender will have satisfied the exhaustion of internal administrative remedies required by Oklahoma Statute 57 O.S. § 564." [*Id.* at 17].

While at JHCC, Harding worked at the Oklahoma Correctional Industries' furniture factory. On March 11, 2020, Harding submitted a RTS to Alex Lunn alleging he was treated unfairly by his furniture factory supervisor, Anthony Wiechec. Harding said he had been "laid in" and asked not to return to work for one week since he raised his voice with his supervisor, but that when other prisoners raised their voices, they were not similarly "laid in." [Doc. No. *11-3]. In the RTS he also acknowledged he was "laid in" because he had been "hobby crafting" by building a weightlifting bench which was in violation of JHCC policy. [*Id.*]. Harding sought to be compensated for the days he was

asked not to work. He also sought compensation for making serving trays and cutting boards he agreed to build for Anthony Wiechec in exchange for apple fritters. This RTS prompted an investigation by the Office of the Inspector General ("OIG"), and Harding was told he could not return to work in the furniture factory until the investigation concluded.

Before this investigation was completed, Harding submitted another RTS on March 18, 2020, in which he complained of not being able to return to work. He also asserted allegations that he had experienced racial prejudice and bias because white inmates who had raised their voices at Anthony Wiechec were not "laid in" like he was. [Doc. No. *11-4]. The OIG reiterated that the investigation was ongoing and that he could not return to work in the meantime.

On March 19, 2020, Harding submitted a third RTS stating he wanted to speak to an investigator. [Doc. No. *11-5]. OIG advised that his request would be forwarded to the investigator.

On April 6, 2020, Harding attempted to submit a grievance to the ARA based on his previous RTSs. [Doc. No. *11-11]. The ARA returned the grievance to Harding unanswered because Harding had received no response to the grievance from the reviewing authority at JHCC and because it was improperly submitted. [*Id.*]. Harding had sent the grievance to ODOC's director. [*Id.* at 6 (envelope directing ARA to the director)]. The ARA informed Harding that to satisfy the second step of the review process, he needed to submit the grievance to the proper reviewing authority at JHCC, not ODOC, before the ARA could consider it. [*Id.* at 3].

On April 28, 2020, Harding submitted a grievance based on his previous RTSs to the reviewing authority. [Doc. No. *11-9]. On May 11, 2020, the reviewing authority returned it to him unanswered in light of the pending investigation which had not yet been completed and because Harding had not properly attached the underlying RTS. [*Id.* at 2]. Harding did not appeal this response to the ARA.

During the investigation of Harding's RTSs, OIG spoke with Harding, fellow inmates, and ODOC staff, including Anthony Wiechec. [Doc. No. *12-1]. Anthony Wiechec admitted to purchasing donuts for inmates who worked at the furniture factory when they met certain deadlines but denied making any special agreements with Harding. At the conclusion of the investigation, OIG confirmed that the only reason Harding was told not to return to work for one week was because he violated JHCC's policy against hobby crafting.

Harding filed two suits—one in this Court and one in the District Court of Cleveland County. Collectively, they alleged discrimination, hostile work environment, retaliation, and violations under 42 U.S.C. § 1981, the Equal Pay Act of 1963, 29 U.S.C. § 206, and 42 U.S.C. § 1983. The state case was removed to this Court, and a magistrate judge ordered that a special report be prepared pursuant to *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). That case was then consolidated with the case Harding filed in this Court. Judge Amanda Maxfield Green issued the R. & R. recommending that Defendants' Motions for Summary Judgment be granted since Harding failed to exhaust

his administrative remedies and that the case be dismissed.[7] Harding objected to the R. & R.'s recommendation. The Court reviews de novo the objected-to portions of the R. & R. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").

## II.   LEGAL STANDARD

"A 12(b)(6) motion must be converted to a motion for summary judgment if 'matters outside the pleading are presented to and not excluded by the court' and 'all parties . . . [are] given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.'" *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (quoting Fed. R. Civ. P. 12(b)). Since Defendants rely on materials outside the pleadings, i.e., the *Martinez* report, and Harding has been afforded notice and an opportunity to respond as provided in Rule 56, the Court construes the Defendants' motions as Motions for Summary Judgment. *Hall v. Bellmon*, 935 F.2d 1106, 1110–11 (10th Cir. 1991).[8]

---

[7] The Court construes the R. & R. to be addressing both Motions for Summary Judgment, *see* [Doc. Nos. *13, 36], as it recognizes the actions have been consolidated and recommends that summary judgment should be granted to Defendants and the action dismissed without prejudice. The R. & R. also relies on filings on both dockets for its analysis.

[8] The Court acknowledges that, in some instances, reliance on a *Martinez* report does not require the district court to convert a motion to dismiss to a motion for summary judgment. *See Hall*, 935 F.2d at 1112 (explaining that "in particular circumstances the *Martinez* report may be considered part of the pleadings for purposes of Fed. R. Civ. P. 12(b)"). However, given this case's likeness with the facts and procedural posture in *Hines v. Sherron*, the Court analyzes this case similarly and concludes conversion is

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is material if under the substantive law it is essential to the proper disposition of the claim." *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016) (internal quotation marks and citation omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). A dispute about a material fact is genuine if a rational trier of fact could find in favor of the nonmoving party on the evidence presented. *Fassbender v. Correct Care Solutions, LLC*, 890 F.3d 875, 882 (10th Cir. 2018); *see also Anderson*, 477 U.S. at 248 (explaining a dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). In applying this standard, the Court "review[s] the facts and all reasonable inferences those facts support[ ] in the light most favorable to the nonmoving party." *Doe v. Univ. of Denver*, 952 F.3d 1182, 1189 (10th Cir. 2020) (second alteration in original) (quoting *Evans v. Sandy City*, 944 F.3d 847, 852 (10th Cir. 2019)).

### III. ANALYSIS

Harding claims that he fully exhausted his claims. He also contends that, if he is permitted the opportunity for additional discovery, he will be able to provide evidence that he exhausted his administratively available remedies.

---

appropriate. 372 F. App'x 853, 856 (10th Cir. 2010) (unpublished).

### A. The Court grants Defendants' Motions for Summary Judgment.

In his objections to the R. & R., Harding argues that an appeal to the ARA would have been futile since every time he tried to do so, his requests were redirected. He also contends that his failure to appeal to the ARA should be excused since he also filed a complaint with the Oklahoma Office of Civil Rights. Lastly, he argues that appealing to the ARA was not necessary to exhaust his remedies since the ODOC procedures say he *may* appeal a reviewing authority's response to the ARA. *See* [Doc. No. *11-8 at 14] ("The inmate/offender may appeal the reviewing authority's response to the grievance . . . .").

"The Prison Litigation Reform Act (PLRA) requires timely and complete exhaustion of administrative remedies prior to filing a § 1983 claim concerning prison conditions." *Brewer v. Mullin*, 130 F. App'x 264, 265 (10th Cir. 2005) (unpublished) (citing 42 U.S.C. § 1997e(a)); *see Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life . . . .").[9] "A prisoner must timely exhaust each step of a prison system's grievance procedure in full compliance with the procedure's requirements—substantial compliance is not sufficient." *Hines v. Sherron*, 372 F. App'x 853, 856 (10th Cir. 2010) (unpublished) (citing *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002)).

---

[9] The PLRA requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Cf.* 57 Okla. Stat. § 564 ("An inmate in the custody of the Department of Corrections shall completely exhaust all available administrative remedies on all potential claims . . . .").

8

Yet, while an inmate "must exhaust available remedies," he "need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016). Remedies are deemed "unavailable" in three circumstances: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) when the process is "so opaque that it becomes, practically speaking, incapable of use;" and (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 642–44.

"When the pro se plaintiff is a prisoner, a court-authorized investigation and report by prison officials (referred to as a *Martinez* report) is not only proper, but may be necessary to develop a record sufficient to ascertain whether there are any factual or legal bases for the prisoner's claims." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991) (citing *Martinez v. Aaron*, 570 F.2d 317, 318–19 (10th Cir. 1978)). For summary judgment purposes, "[a] *Martinez* report is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Id.* at 1111.

Here, the *Martinez* report shows that Harding did not fully exhaust his administrative remedies for any of his claims. Although he started the administrative review process several times, it is undisputed that Harding did not properly submit any of his grievances to the ARA—the last step of the administrative review process.

The Court also concludes that, even viewing the evidence in the light most favorable to Harding, he has not carried his burden of showing administrative remedies

"'were unavailable to him.'" *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019) (quoting *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011)).

First, although Harding was at times redirected when he incorrectly filed grievance documents, the record shows that JHCC was responsive to his concerns. When Harding complied with the grievance policy and filed RTSs complaining of Weichec's conduct, JHCC via OIG began investigating the allegations in response to Harding initiating the grievance process.

Second, the grievance process is clearly laid out, and Harding has not provided evidence that he was incapable of using or following the policy.

Third, in each of ODOC's interactions with Harding, it was only enforcing its grievance process—not preventing Harding from taking advantage of it. For example, although OIG was investigating Harding's claims against Weichec while Harding was undergoing the grievance process, this case differs from *Ross*. There, inmates who initiated the grievance process while an investigation was ongoing were told that their grievance was "[d]ismissed for procedural reasons" and that "[n]o further action shall be taken within the [grievance] process." *Ross*, 578 U.S. at 647. Conversely here, inmates are informed that, even when grievances go unanswered for any reason including because the matter is "still pending investigation," they may appeal that lack of response. *See* [Doc. *11-8 at 13] ("If there has been no response by the reviewing authority within 30 days, but no later than 60 days, of submission, the inmate/offender may send a grievance to the ARA with evidence of submitting the grievance to the proper reviewing

authority.").[10] Thus. Harding has provided no evidence suggesting this process was unavailable to him.

Addressing Harding's other arguments, "[e]ven where the available remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available." *Jernigan*, 304 F.3d at 1032 (quotations omitted). And nothing in the Tenth Circuit's PLRA exhaustion jurisprudence suggests the exhaustion requirement is waived if a plaintiff files a complaint with the Oklahoma Office of Civil Rights. Lastly, Harding misunderstands the language of ODOC's administrative review process when it uses the term "may." He was not required to appeal to the ARA in general. For example, he would not be penalized by ODOC for failing to do so. But as stated in the grievance process, if he wished to file suit, he needed to exhaust his administrative remedies which includes appealing to the ARA.

Essentially, although Harding disputes a variety of facts, he does not *genuinely* dispute any *material* facts—i.e., that he completed the review process by receiving a final ruling from the ARA. *See* [Doc. No. *11-8 at 17] ("The ruling of the ARA is final and will conclude the internal administrative process available to the inmate/offender within the jurisdiction of ODOC."). Accordingly, the Court grants Defendants' Motions for Summary Judgment.

---

[10] Additionally, unlike in *Ross* where the investigative process was completely separate from the grievance process, here, the processes are intertwined. *Ross*, 578 U.S. at 637 ("[Inmate] acknowledged that he had not sought a remedy through the [grievance process]—because, he thought, the [] investigation served as a substitute for that otherwise standard process.").

B.      **The Court denies Harding's Motion for Discovery.**

In his discovery motion, Harding contends that ODOC did not include all the relevant documents in the *Martinez* report. Thus, Harding requests (1) all RTSs addressed to Warden Luke Pettigrew from March 1, 2020 to July 1, 2021, (2) all grievances sent to Warden Luke Pettigrew from March 1, 2020 to July 1, 2021, and (3) the grievance he improperly submitted to the ARA with "the attached RTS with response from Luke Pettigrew." [Doc. No. 43 at 2–3].

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). "That declaration must specify '(1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable [the party] to obtain those facts and rebut the motion for summary judgment.'" *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1249 (10th Cir. 2015) (quoting *Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1096 (10th Cir. 2010)).

Even construing Harding's motion liberally, he has failed to meet Rule 56(d)'s requirements. Harding does not specify how the requested documents will show he has exhausted his administrative remedies. Although Harding alleges he was unable to exhaust his administrative remedies because the ARA did not send back one of his RTSs

when he improperly submitted a grievance, he failed to appeal the reviewing authority's May 11, 2020 decision which returned his grievance for failure to attach the necessary documents.[11] Further, Harding has not adequately specified how the requested documents are essential to his claims or how they will rebut Defendants' Motions for Summary Judgment. *See Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1310 (10th Cir. 2010) (requiring that a party seeking to defer a ruling on summary judgment must "explain[] why facts precluding summary judgment cannot be presented [and] . . . identify[ ] the probable facts not available and what steps have been taken to obtain these facts"). Thus, the Court denies the Discovery Motion.

## IV.  **CONCLUSION**

For these reasons, the Court ACCEPTS the R. & R.'s recommendation. [Doc. No. 40]. Consequently, Defendants' Motions for Summary Judgment are GRANTED. [Doc. Nos. *13, 36]. Additionally, Harding's Motion for Discovery is DENIED. [Doc. No. 43]. The Court DISMISSES the case without prejudice. *Hines v. Sherron*, 372 F. App'x 853, 854 (10th Cir. 2010) (unpublished) (affirming a district court's decision to grant summary judgment and dismiss the complaint without prejudice for failure to exhaust administrative remedies); *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) ("Ordinarily, a dismissal based on a failure to exhaust administrative remedies should be *without* prejudice." (emphasis in original)).

---

[11] The policy provides that should an inmate need a copy of his RTS, "[o]ne copy of the original 'Request to Staff' that is submitted will be provided if requested by the inmate/offender. All additional copies are subject to applicable fees . . . ." [Doc. No. *11-8 at 9].

IT IS SO ORDERED this 29th day of March 2024.

_____
JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE